Argued 13 July, decided 8 August, 1904.

## STATE EX REL. *v.* WILLIAMS.

[67 L. R. A. 167, 77 Pac. 965.]

MANDAMUS TO COMPEL ARREST FOR MISDEMEANOR WITHOUT WARRANT.

1. Mandamus ought not to issue directing public officials to proceed without a warrant and arrest certain named persons who are alleged to be continuously committing misdemeanors not in the presence of any court or officer.

CONSTRUCTION OF WRIT OF MANDAMUS — ARREST.

2. A writ commanding a peace officer to arrest and prosecute particular persons said to be guilty of sundry misdemeanors will not be construed as a direction to file formal charges against them before making the arrests.

MANDAMUS TO POLICE JUDGE.

3. A mandamus to a police judge directing him to issue bench warrants for all violators of a certain city ordinance who have forfeited their bail or not appeared for trial, would be ineffectual because of the possible death of many, and because some have deposited money in lieu of bail, and therefore are not within the terms of the writ.

COMMANDING ACT NOT ENJOINED BY LAW.

4. A mandamus ought not to issue directing a public officer to perform an act not enjoined upon him by law : as, for example, in view of a city charter providing for a clerk of the police court, who shall keep the seal of such court and affix it to the process thereof, it is not the duty of the judge to issue bench warrants, and he should not be commanded by mandamus to do so.

ADMISSIONS BY DEMURRER — LEGAL CONCLUSIONS.

5. Under the rule that a demurrer admits probative facts only, and not conclusions at all, an alternative writ of mandamus to a municipal judge to issue bench warrants, reciting merely that he neglects to issue them "as required by law," does not, as is necessary, show that it is incumbent on such judge to issue bench warrants, but states merely a legal conclusion.

MANDAMUS — MISJOINDER OF CAUSES.

6. A writ of mandamus may properly be directed to several officers directing each to perform one or more of several acts enjoined by law, the series of acts so commanded being necessary to secure to relator some legal right.

DIRECTING MAYOR TO ORDER CHIEF OF POLICE TO OBEY LAWS.

7. Though it is the duty of the mayor or executive board of a city, on receipt of satisfactory information, to direct the chief of police to enter gambling houses and arrest persons there found offending against the law, yet, it being made the duty of a police officer to inform against and prosecute persons whom he has reasonable cause to believe guilty of gambling, mandamus ought not to issue to the mayor to order the chief of police to' prosecute gamblers, nor ought such writ to issue to the chief of police directing him to obey such order, for, it being the duty of the chief to suppress gambling, he does not need any special orders, and a writ to him alone directing the performance of his duty will be sufficient.

ORDERS OF SUPERIOR AS PROTECTION TO INFERIOR OFFICER.

8. An order by a superior to an inferior to perform or do an unlawful act or not to perform a duty required by law is void and affords no protection to the person receiving it. Thus, mandamus to a chief of police to prosecute gamblers will not be refused on the principle that an officer cannot be compelled to do what his superior officer has lawfully commanded him not to do, where the

mayor and the chief of police have entered into an unlawful conspiracy not to prosecute such offenders.

EFFECT OF SUSTAINING DEMURRER FOR MISJOINDER OF CAUSES.

9. The effect of sustaining a demurrer to a complaint for a misjoinder of several causes of complaint is to entirely obliterate the pleading, and the party must plead over or be nonsuited.

From Multnomah : JOHN B. CLELAND, ALFRED F. SEARS, JR., ARTHUR L. FRAZER, and MELVIN C. GEORGE, Judges, in joint session.

This is a mandamus proceeding, instituted on the relation of R. Livingstone and others against George H. Williams, as mayor of Portland ; Charles H. Hunt, as chief of police; H. W. Hogue, as municipal judge; and Charles F. Beebe and others, as members of the executive board of that city — to compel the arrest and prosecution of certain persons for alleged violations of a clause of the city charter, of the provisions of a municipal ordinance, and of the requirements of a statute of the State prohibiting gambling. Alternative writs were issued, one to the members of the executive board as a body, and one to each of the other defendants, who severally demurred thereto on the grounds: (1) That they did not state facts sufficient to entitle the relators to the relief demanded ; (2) that it appeared therefrom that a plain, speedy, and adequate remedy in the ordinary course of law existed for the suppression of the evil alleged ; (3) that the court did not have jurisdiction of the persons of the defendants nor of the subject-matter involved; and (4) that several alleged causes of special proceedings were improperly united. These demurrers being overruled, and the defendants declining further to plead, the writs were made peremptory, and they severally appeal.                    ·REVERSED.

For appellants there was an oral argument by *Mr. Joseph J. Fitzgerald*, with a brief over the names of *Lawrence A. McNary*, City Attorney, and *John P. Kavanaugh* to this effect.

I. Mandamus does not supersede legal remedies, but it is intended to supply the want thereof and prevent a failure of justice, and it will not lie where the law provides another plain, speedy, and adequate remedy : B. & C. Comp. § 605 ; *Ball* v. *Lappius*, 3 Or. 55 ; *Durham* v. *Monumental Silver Min. Co.* 9 Or. 41 ; *Oregon City* v. *Moore*, 30 Or. 221 (46 Pac. 1017, 47 Pac. 851); *Kimball* v. *Union Water Co.* 44 Cal. 173 (13 Am. Rep. 157).

II. Another legal remedy that will defeat mandamus. is one that will place the relator in the same position he occupied before the omission of the duty complained of, or would have occupied had the duty been performed : *Coos Bay R. Co.* v. *Wieder*, 26 Or. 453 (38 Pac. 338); *Habersham* v. *Sears*, 11 Or. 431 (50 Am. Rep. 481, 5 Pac. 208); *State ex rel.* v. *Cone*, 40 Fla. 409 (74 Am. St. Rep. 150, 25 So. 279).

III. Mandamus will not be awarded to compel municipal officers to arrest and prosecute alleged offenders against the state laws and city ordinances where the state laws provide an adequate remedy by indictment or information for the same offense : *Highway Com'rs* v. *People*, 66 Ill. 339; *Highway Com'rs* v. *People*, 73 Ill. 203 ; *State ex rel.* v. *Yant*, 134 Ind. 121 (33 N. E. 896); Tapping, Mandamus, 76.

IV. The general statutes of this State do provide another plain, speedy, and adequate remedy for the arrest, prosecution, and punishment of offenders against the gambling laws by information or indictment, and prosecution in the circuit court or justice court of the district : B. & C. Comp. §§ 1944, 1947, 1949–1958.

V. Municipal officers will not be compelled by mandamus, without warrant or complaint, to arrest and prosecute persons charged with violation of the state laws and city ordinances: *State ex rel.* v. *Horner*, 16 Mo. App. 191 ; *Alger* v. *Seaver*, 138 Mass. 331 ; *State ex rel.* v. *Francis*, 95 Mo. 44 (8 S. W. 1); *People ex rel.* v. *Listman*, (82 N. Y. Supp. 784 (84 App. Div. 637).

VI. When the writ is directed to an officer who is vested with judicial or ministerial discretion in relation to the performance of the duty enjoined, it will compel him to act, but not to decide in particular manner: *People* v. *School Trustees*, 42 Ill. App. 60 ; *Ex parte Hayes*, 26 Ark. 510.

VII. The writ cannot be awarded to compel a series of acts, or general course of conduct, where it is impossible for the court to supervise or control performance of the acts or duties: *Rosenfeld* v. *Einstein*, 46 N. J. L. 479 ; *Diamond Match. Co.* v. *Powers*, 51 Mich. 145 (16 N. W. 314); *State ex rel.* v. *Associated Press*, 159 Mo. 410 (51 L. R. A. 151, 81 Am. St. Rep. 368, 60 S. W. 91).

For respondents there was an oral argument by *Mr. Martin L. Pipes*, with a brief over the name of *Pipes & Tifft* and *Miller Murdock* to this effect.

1. Mandamus lies to compel municipal officers to perform specific duties in enforcing municipal law: *Goodell ex rel.* v. *Woodbury*, 71 N. H. 378 (52 Atl. 855); *Wood* v. *Strother*, 76 Cal. 545 (9 Am. St. Rep. 249, 18 Pac. 766); *State ex rel.* v. *St. Louis*, 134 Mo. 296 (56 Am. St. Rep. 503, 35 S. W. 617); *Re Whitney*, 3 N. Y. Supp. 838 (24 N. Y. S. R. 968); *People ex rel.* v. *Byrne*, 9 Abb. N. C. 127, note ; *State ex rel.* v. *Police Board*, 10 Ohio Dec. Reprint, 256.

2. Mandamus lies to compel the judge to issue a warrant of arrest: *Benners* v. *State*, 124 Ala. 97 (26 So. 942); *State ex rel.* v. *McCutcheon*, 20 Neb. 304 (30 N. W. 58); *People ex rel.* v. *Swift*, 59 Mich. 529 (26 N. W. 694); *Attorney General ex rel.* v. *Police Justice*, 40 Mich. 631 ; *State ex rel.* v. *Laughlin*, 75 Mo. 358 ; *State ex rel.* v. *Cummings*, 17 Neb. 311 (22 N. W. 545); 1 Bishop, Crim. Proc. § 1403 ; Merrill, Mandamus, § 203.

3. Where the duty is of a public nature no demand is necessary: *Northern Pac. R. Co.* v. *Washington Ter.* 142 U. S.

492 (12 Sup. Ct. 283); *Oroville & V. R. Co.* v. *Plumas County,* 37 Cal. 354; *People ex rel.* v. *Reis,* 76 Cal. 269 (18 Pac. 309).

4. Where permissive language is used in conferring power upon an officer and the public or third persons have an interest in the exercise of the power, its exercise is imperative: *Kohn* v. *Hinshaw,* 17 Or. 308 (20 Pac. 629); *Smith* v. *King,* 14 Or. 10 (12 Pac. 8); *McLeod* v. *Scott,* 21 Or. 94 (26 Pac. 1061, 29 Pac. 1).

5. Discretion of an inferior officer must be exercised reasonably and fairly, and its abuse may be controlled by mandamus: *Ex parte Bradley,* 74 U. S. (7 Wall.) 377; *State ex rel.* v. *Lafayette County Court,* 41 Mo. 226; *Glencoe* v. *People,* 78 Ill. 389; *People ex rel.* v. *Superior Court,* 10 Wend. 285; *Stockton & V. R. Co.* v. *Stockton,* 51 Cal. 339; *Wood* v. *Strother,* 76 Cal. 545 (9 Am. St. Rep. 249, 18 Pac. 766); *McLeod* v. *Scott,* 21 Or. 94, 109 (26 Pac. 1061, 29 Pac. 1); *State ex rel.* v. *Higgins,* 76 Mo. App. 328.

6. The relators need have no special interest where the matter concerns a public duty: *State ex rel.* v. *Ware,* 13 Or. 380 (10 Pac. 885); *State ex rel.* v. *Grace,* 20 Or. 157 (25 Pac. 382); 13 Ency. Pl. & Pr. 632; *In re Whitney,* 3 N. Y. Supp. 838; *People* v. *Meakim,* 56 Hun, 626; *State ex rel.* v. *Francis,* 95 Mo. 44 (8 S. W. 1).

7. As to the claim that mandamus will not lie against a governor, and by analogy ought not to lie against the mayor, the authorities are in conflict, but we believe that the better reasoned ones are against the claim made by the defendants: Moses, Mandamus, 82; *Harpening* v. *Haight,* 39 Cal. 211; *State* v. *Noonan,* 59 Mo. App. 524; *Frank* v. *St. Louis,* 145 Mo. 600 (47 S. W. 508); *People* v. *Mayor,* 64 Hun, 408; *Dreyfus* v. *Lonergan,* 73 Mo. App. 336; *State ex rel.* v. *Born,* 97 Wis. 542 (73 N. W. 105); *State* v. *Ames,* 31 Minn. 440; *People* v. *Hastings,* 5 Ill. App. 436; *People ex rel.* v. *Morton,* 156 N. Y. 136 (41 L. R. A. 231, with note, and 66 Am. St. Rep. 547, with note).

Mr. Chief Justice Moore, after stating the facts in the above terms, delivered the opinion of the court.

It is contended by defendants' counsel that errors were committed in overruling these demurrers. Let us first consider whether or not the alternative writs state facts sufficient to warrant the granting of the relief demanded. They show the right of the relators to institute these proceedings; allege the incorporation of the City of Portland, and the several duties of the respective defendants, so far as involved herein; that since March, 1903, defendants have wilfully conspired to obstruct and defeat the enforcement of the provisions of the city charter, of the municipal ordinance, and of a statute of the State prohibiting gambling, and to thwart the conviction and punishment of persons engaged in gaming, or who keep or frequent gambling houses, and refuse to perform the duties imposed upon them in relation to such prohibition; that every day and night since the unlawful agreement was entered into a number of persons have openly and notoriously been engaged in keeping and conducting gaming and gambling houses, rooms, and premises, and playing the games so prohibited, which places have been and now are kept and used as common gaming houses for playing therein for wager of money at games of chance, some of the persons so employed and of the rooms in which they are engaged being as follows: John Thomas, 130 Fifth Street, H. Shapiro, 185 Third Street, George Fuller, * * Fred Fritz, 242 Burnside Street, E. Blazier, 248 Burnside Street, and A. D. Martini, 81 First Street; that at all times and now the defendants had and have information satisfactory to each of them that such houses and rooms were and are constantly used for gambling, but, in pursuance of their unlawful agreement, the chief of police, with the sanction and approval of his codefendants, pretends to subscribe and verify complaints against such persons, feigning

to charge them severally, in due form of law, with violating the ordinances relating to gambling, files the same in the municipal court, and, without any order therefrom fixing their bail, induces them to deposit sums of money, pretending that they are in lieu of bail, and the municipal judge, in furtherance of such unlawful combination, professes to order such money forfeited and paid into the city treasury, the defendants intending that the persons so charged should not appear in court for trial, they consenting thereto, relying upon the defendants' advice that they were not to be tried on such charges if twice each month they would deposit the sums agreed upon as simulated bail.

It is also further alleged that in pursuance of such conspiracy all persons conducting common gaming houses, including those hereinbefore named, have been charged by the chief of police twice each month with the offense of gambling, and in every instance they deposited a specified sum of money in lieu of bail, which has invariably been forfeited, the municipal judge refusing to proceed with their trials; that at intervals between the time of such deposits the defendants had, and now have, satisfactory information, and know that the persons so charged are keeping gaming houses, but the defendants wilfully neglect and refuse to charge them therewith, or cause them to be arrested therefor, or to be brought to trial, and in doing so the defendants have not exercised any discretion, but act arbitrarily, and with intent to permit public gambling in violation of law; that the municipal judge, well knowing that the persons making such deposits are in the city, at their several gambling houses, engaged in playing prohibited games, wilfully neglects to issue bench warrants for their arrest, "as required by law," with intent that they shall continue to violate the city charter, municipal ordinance, and statute of the State, so as to derive

from them an illegal and corrupt revenue for the city; that the largest gambling house is known as the "Portland Club," at No. 130 Fifth Street, which is, and at all times mentioned herein has been, kept and conducted by Peter Grant, Jack Grant, Lawrence Sullivan, Harvey Dale, and Nate Solomon; that in March, 1903, and thereafter at regular intervals, the chief of police has pretended to file in the municipal court verified complaints against one of the persons last mentioned under the fictitious name of John Thomas, well knowing the true name of the person intended to be charged, who would thereupon deposit in that court, under pretense of bail, about $250, but on November 23, 1903, the sum left for that purpose was $300, which the judge pretended to forfeit—whereby gambling has continued in violation of law, and the persons engaged therein and pretended to be charged therewith and arrested therefor under the name of John Thomas have, in pursuance of such conspiracy, never appeared in the municipal court for trial; and that the relators have no plain, speedy, or adequate remedy in the ordinary course of law.

The four alternative writs are alike in every particular, except the thirty-seventh paragraph thereof, which relates to the respective commands enjoined upon the several defendants; the one addressed to the mayor, omitting the choice of showing cause, being as follows:

"Now, Therefore, you are commanded that immediately after the receipt of this writ you forthwith direct Charles H. Hunt, as chief of police of said city, to enter, or cause a proper police officer to enter, the common gaming houses described in this writ, and particularly the premises at 130 Fifth Street, known as the 'Portland Club,' which is a common gaming and gambling house, and forthwith arrest or cause to be arrested the person or persons who may be found there violating the gambling law and ordinances, and particularly the person who has heretofore

45 OR.——21

been charged by the said chief of police in the municipal
court of said city with violating the laws and ordinances
of said city under the name of John Thomas, and the per-
sons to wit, Peter Grant, Jack Grant, Lawrence Sullivan,
Harvey Dale, and Nate Solomon, who are keeping and
using said gambling house, and to seize all instruments
of gaming that may be found therein, and bring the same
into the municipal court, and to vigorously prosecute said
persons therefor, and that you show cause," etc.

The command addressed to the executive board is al-
most identical with that to the mayor, and that directed
to the chief of police was to execute the orders of the
mayor and of the executive board, as contained in the
mandates to them. The municipal judge was required to
perform the following service :

" Now, Therefore, you are commanded that immediately
after the receipt of this writ you issue bench warrants for
all persons charged with offenses against the ordinances
of said city relating to gambling, whose bail has been for-
feited by order of your court, and who have not appeared
for trial in the several actions against them, and particu-
larly for the persons charged under the name of John
Thomas, charged in the months of May, June, July, Au-
gust, September, October, and particularly about Novem-
ber 30, 1903, and that you cause the said persons to be
brought before you and proceed to the trial thereof."

Section 194 of the charter of the City of Portland, which
is relied on as imposing upon the mayor and the executive
board the duties sought to be enforced against them in
this proceeding, is, so far as deemed involved herein, as
follows : " Whenever the mayor or the executive board as-
certains or receives satisfactory information that any house,
room, or premises within such city * * is being kept or
used as a common gaming house or common gambling
premises, for playing therein for wager of money at a
game of chance, * * it shall be lawful for the mayor or
the executive board to authorize and direct the chief of

police, or any officer of the force, to enter such house, room, or premises, and forthwith arrest all persons therein found offending against any law, and to sieze all instruments of gaming * * and bring the said articles into court": Sp. Laws 1903, p. 83.   Assuming, without deciding, that the clause "it shall be lawful," in the section quoted, is not merely permissive, but mandatory, imposing upon the mayor and the executive board the duty of directing the chief of police as therein specified, had these officers the power, and could the court compel them, to order the arrest, without a warrant, of any person not found offending against any law?   The statute prescribing when an arrest may be made without written authority is as follows: "A peace officer may, without a warrant, arrest a person,— (1) For a crime committed or attempted in his presence; (2) when the person arrested has committed a felony, although not in his presence; (3) when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it": B. & C. Comp. § 1611.   Ordinance No. 3983 of the City of Portland, approved October 13, 1883, prohibiting gambling, and in force when the writs herein were issued, imposes for a violation of its provisions a punishment by imprisonment not exceeding ninety days or by a fine not exceeding $300, or by both such fine and imprisonment.   It will thus be seen that by this municipal enactment the crime of gambling is only a misdemeanor, as it is likewise regarded by statute of this State: B. & C. Comp. § 1944.

1. It would have been lawful for the mayor or for the executive board to have directed the chief of police to enter any gambling house in the City of Portland and arrested all persons found therein offending against any law, for the individuals so discovered would be guilty of a crime committed or attempted in the presence of a peace officer:

B. & C. Comp. § 1611. When, however, the mayor and the executive board were commanded in the alternative writs, without either the filing of a complaint or the issuing of a warrant, to direct the arrest of the persons named, we do not think any authority existed therefor; for, if the persons designated were found offending against any law, the insertion of their names in the alternative writs was unnecessary, but, if not so found, their alleged crimes being only misdemeanors, and not committed in the presence of the court (B. & C. Comp. § 1615), it was powerless to command their apprehension: *State ex rel.* v. *Francis*, 95 Mo. 44 (8 S. W. 1). In that case it was held that a writ of mandamus would not be issued to compel the Board of Police Commissioners of the City of St. Louis to arrest and prosecute certain named persons for a violation of the law of Missouri prohibiting the sale of fermented liquors on Sunday. In rendering the decision Mr. Justice SHERWOOD, speaking for the court, says: "Again, on the mere admission of the respondents that four citizens have done certain acts, the latter are to be arrested and prosecuted without affidavit and without warrant. This is further, it seems to me, than the mandatory authority of a court extends. Indeed, I have found no precedent for a mandamus for the arrest of any one. It is the duty of a sheriff, as conservator of the peace, to cause all offenders against the law, in his view, to enter into recognizance with surety to keep the peace, etc.: 1 Rev. St. 1879, § 3889. It is also his duty to quell and suppress assaults and batteries, riots, affrays, and insurrections, to apprehend and commit to jail all felons and traitors, and execute all process directed to him by legal authority: 1 Rev. St. 1879, § 3891. And yet it is believed that no instance can be found where a mandamus has issued commanding a sheriff to quell a riot or to arrest a criminal. The fact that no such precedent can be found argues very strongly against the exercise of

such authority. It is very easy to see that, if the process of mandamus could be employed in this ordinary way, that extraordinary writ would soon descend from its high plane and become very commonplace."

2. To secure freedom from illegal restraint for trivial causes, the wisdom and experience of ages have sanctioned the use of certain forms of procedure which must be observed before an alleged criminal can lawfully be arrested for a misdemeanor not committed in the presence of a magistrate or of a peace officer. A formal charge must be made and filed, showing that the court has jurisdiction of the subject-matter and authority to issue a warrant, in pursuance of which a peace officer may apprehend the person therein named, and be exonerated from all consequences that may possibly result from a wrongful imprisonment, by producing the writ if it appears therefrom that the court issuing it had such jurisdiction, and there is nothing disclosed to notify him of any lack of such authority: Crocker, Sheriffs, § 48; Murfree, Sheriffs, § 1161; 3 Cyc. 880; 2 Am. & Eng. Enc. Law (2 ed.), 869, 893; *Savacool* v. *Boughton*, 5 Wend. 170 (21 Am. Dec. 181); *In re Way*, 41 Mich. 299, 304 (1 N. W. 1021). In *Goodell ex rel.* v. *Woodbury*, 71 N. H. 378 (52 Atl. 855), relied upon by the relators as supporting the judgment rendered herein, a writ of mandamus was issued to compel the chief of police of Manchester, N. H., to enforce the provisions of a statute of that State prohibiting the sale of intoxicating liquors; but the officer was commanded to prosecute, not to arrest, the persons named in the writ. In deciding that case Mr. Chief Justice BLODGETT, referring to the duties of the chief of police, says: "The defendant is not merely a peace officer; he is also a prosecuting officer. The ordinances of Manchester (1892) provide that 'he shall carry into execution within the city the laws of the State and all the ordinances of the city, and be vigilant to detect and

bring to punishment all violators thereof. * * He shall receive all complaints made to him of any violation of the laws or of any ordinance of the city, and shall, in behalf of the city, cause all offenders against such laws and ordinances to be promptly prosecuted before the Police Court of the City of Manchester, and shall attend, on behalf of the city, at their trial.'" In the case at bar the chief of police was required to arrest and vigorously prosecute the persons named in the alternative writ addressed to him, but, as such order was a recital of the language of the city charter (section 195), we do not think the command can be construed, in the extraordinary remedy invoked, as a direction to file formal charges against the persons so named, before arresting them, and that a reasonable interpretation of the language used means that the officer was required (1) to apprehend such persons; (2) to bring them into the municipal court; (3) to prefer charges against them ; and (4) to secure the attendance of witnesses whose testimony might lead to their conviction.

The Congress of the United States, fearing an infringement of the citizen's right of locomotion, and believing that the constitution originally adopted did not sufficiently "secure the blessings of liberty," guaranteed by that instrument, proposed at an early day and secured the ratification of the fourth amendment to the fundamental law, which, so far as applicable herein, is as follows: "The right of the people to be secure in their persons * * against unreasonable * * seizures shall not be violated ; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing · * * the persons * * to be seized." In the case of *In re Way,* 41 Mich. 299 (1 N. W. 1021), Mr. Chief Justice CAMPBELL, commenting on the mode of apprehending persons, says : " It must not be forgotten that there can be no arrest without due process of law. An arrest without warrant has never been

lawful except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in the presence of an officer." In *Bright* v. *Patton*, 5 Mack, 534 (60 Am. Rep. 396), it was ruled that an officer had no right to arrest without a warrant, after an offense had been committed, where the punishment is only a fine and imprisonment in jail. The illegal arrest of a person without a warrant entitles him to compensation for the damages sustained by reason of the false imprisonment: *Thorne* v. *Turck*, 94 N. Y. 90 (46 Am. Rep. 126). In *McConnell* v. *Kennedy*, 29 S. C. 180 (7 S. E. 76), the court, in distinguishing between false imprisonment and malicious prosecution, says: "The foundation of the cause of action in the one case is the right which even a guilty man has to be protected against any unlawful restraint of his personal liberty, while in the other it is founded upon the right of an innocent man to be compensated in damages for any injury he may sustain by bringing against him a groundless charge, even though such charge may be presented and prosecuted in accordance with the strictest forms of law." The statute of this State, emphasizing the love of personal liberty entertained by a free people as expressed in the fourth amendment to the federal constitution, impliedly prohibits the arrest, without a warrant, of any person for the commission of a misdemeanor, unless the offense was attempted or consummated in the presence of a magistrate or of a peace officer (B. & C. Comp. § 1611) ; so that, if the chief of police had obeyed the command of the alternative writ directed to him, and, without a warrant, arrested the persons so designated, their alleged crimes being only misdemeanors, he would probably have been liable to them in nominal damages, at least, for a false imprisonment, unless he apprehended them in the act of violating the law, notwithstanding they may there-

tofore have been guilty of offending against the statute and city ordinances prohibiting gambling. "An officer," says the editor of the Am. & Eng. Enc. Law (vol. 19, p. 729, 2 ed.), "cannot be compelled to do more than the statute requires of him"; and hence the issuance of the alternative writs addressed to the mayor, to the executive board, and to the chief of police, in so far as they commanded the arrest without a complaint or warrant of the persons so named, was an exercise of power not authorized, and therefore void.

3. A compliance by the municipal judge with the command directed to him would have necessitated an examination of the journals of the municipal court from the time of its organization until the writ was returned to ascertain the names of the persons whose bail had been ordered forfeited and who had not appeared for trial in the several actions instituted therein against them, that bench warrants might be issued for their arrest, regardless of the fact that many of those intended to be included in the order may possibly have died in the long interim. The statute makes a distinction between bail and money deposited in lieu thereof (B. & C. Comp. § 1338), so that a literal compliance by that officer with the alternative writ directed to him to "issue bench warrants for all persons charged with offenses against ordinances of said city relating to gambling where bail has been forfeited by your court, and who have not appeared for trial in the several actions against them," would not have resulted in punishing the persons alleged to have been guilty of violating the law prohibiting gambling, nor possibly corrected the evil sought to be suppressed by these proceedings, assuming, as the writs allege and the demurrers admit, that in pursuance of the conspiracy entered into by the defendants money, in each instance, was deposited in lieu of bail.

4. The alternative writs, in referring to the duties imposed on the municipal judge, contained the following averment:

"Among the provisions of law not otherwise provided in said charter are that a defendant shall be admitted to bail by an order of the court, and after such order is made he may deposit in lieu thereof with the clerk the sum of money mentioned in the order, and if, without sufficient excuse, the defendant neglect or fail to appear for arraignment or upon any other occasion when his presence in court may be lawfully required, the court must direct the fact to be entered in the journal, and the undertaking of bail, or the money deposited in lieu thereof, as the case may be, is thereupon forfeited. When by reason of the defendant's neglect or failure to appear he has incurred a forfeiture of his bail or money deposited in lieu thereof, it is the duty of the court, by an order entered upon its journal, to direct the arrest of the defendant, and his commitment to the officer to whose custody he was committed at the time of giving bail, and his detention until legally discharged. It is then the duty of the court to proceed to trial in ordinary course until final determination."

The charter provides that the municipal court shall be a court of record having a seal: Section 328. All proceedings before such court or the judge thereof are governed and regulated by the general laws of the State applicable to the justice of the peace or justice's courts in like cases, except as in the charter otherwise provided: Section 332. The executive board is authorized to appoint a clerk of such court, who is to keep the seal thereof and to affix it to any process emanating therefrom: Section 331. The demurrers having admitted the duty of the municipal judge to enter in the journal of his court a memorandum of the forfeiture of the money deposited in lieu of bail, and of orders in such cases directing the arrest of the persons whose money had been forfeited, as alleged, it must be presumed, in the absence of any aver-

ment to the contrary, that such official duty has been
regularly performed (B. & C. Comp. § 788, subd. 15), and,
this being so, the issuing of the bench warrants did not
devolve upon the judge, as stated in the command ad-
dressed to him, but on the clerk of the municipal court,
who is required to affix the seal thereof to any process :
Charter of Portland, § 331.

5. Though it is alleged in the alternative writs that the
municipal judge wilfully neglects to issue bench warrants,
"as required by law," for the arrest of persons whose
money deposited in lieu of bail has been declared for-
feited, it is not averred that it is incumbent upon him to
issue such warrants, unless the duty in this respect can be
implied from the qualifying phrase "as required by law."
It was necessary to state, as a major premise: (1) The
facts constituting the duty which the law enjoins on
the defendants; and, as a minor premise, (2) their fail-
ure, neglect, or refusal to comply therewith, from which
the court deduces the conclusion sought to be established :
Bliss, Code Pl. (3 ed.) § 137. The writs having stated
that the municipal judge neglected to issue bench war-
rants "as required by law," the phrase quoted is only a
legal conclusion, and not the averment of a material fact,
stated as the foundation of an enforceable right. It will
be remembered that the sufficiency of the alternative
writs was challenged by demurrer, and in such case the
probative facts alone are admitted, and not the conclu-
sions of law so stated : *Longshore Printing Co* v. *Howell*,
26 Or. 527 (38 Pac. 547, 28 L. R. A. 464, 46 Am. St. Rep.
640). It not having been alleged that it was incumbent
upon the municipal judge to issue bench warrants, and,
as we have seen this duty imposed by the city charter
on the clerk of the municipal court, it follows that the
alternative writs do not state facts sufficient to constitute
a cause of special proceeding against the former.

6. Considering the fourth ground of the demurrer interposed to the alternative writs — that several causes of alleged special proceedings have been improperly united — it has been held that one writ of mandamus against all officers concerned in the separate but coöperative steps for levying and collecting a tax is the proper and effective remedy to secure its exaction: *Labette County Com'rs* v. *United States ex rel.* 112 U. S. 217 (5 Sup. Ct. 108). In deciding that case Mr. Justice MATTHEWS, in speaking for the court on the procedure, said: "There is no incongruity in such a writ. It would not be complete or effective without it embraced all the particulars which, in law, are essential to the full duty contemplated by it, the performance of which is necessary to secure its benefits to the party who sues it out. So here the object of this writ, though including many particular steps in obeying it, is nevertheless single, in that it is intended to obtain an end which is the result of the means prescribed. The command of the writ is to perform the general duty, which is obeyed by performing the successive steps which constitute it. Clearly, the writ would not be chargeable with duplicity if addressed to one person, although it commanded the performance of a series of acts, each of which was a condition of the performance of its successor, where the right of the relator consists in the result legally flowing from the combined whole. It can make no difference in principle that in a particular case the law, instead of casting the performance of the entire duty upon a single person, has divided it among several, each to perform but one act in the series, and each acting independently, and not as responsible to any of the others, but all required to coöperate in the attainment of the single result, and by a continuous and uninterrupted succession so as to preserve the integrity and unity of the performance of an entire duty. The relator is entitled to an effective writ, and he can have

it only on the terms of joining in its commands all those whose coöperation is by law required, even though it be by separate and successive steps in the performance of those official duties which is necessary to secure to him his legal right. Otherwise the whole proceeding is liable to be rendered nugatory and abortive." To the same effect, see *State ex rel.* v *Bailey*, 7 Iowa, 390.

7. In the case at bar it will be remembered that section 194 of the city charter provides that it shall be lawful for the mayor or the executive board, on the receipt of satisfactory information, etc., to direct the chief of police to enter common gaming houses in the city and arrest all persons therein found offending against any law. The statute of this State makes it the duty of a police officer to inform against and diligently prosecute any and all persons whom he shall have reasonable cause to believe guilty of violating the provisions of an act prohibiting gambling: B. & C. Comp. § 1950. This enactment made the chief of police of the City of Portland a prosecuting officer (*Goodell ex rel.* v. *Woodbury*, 71 N. H. 378, 52 Atl. 855), and, if he had reasonable cause to believe that any person was violating such law, also imposed on him the duty of enforcing its provisions without any direction to that effect from the mayor or from the executive board. The obligation thus enjoined results from an office (B. & C. Comp. § 605), and for a refusal by the chief of police to comply with the duty which the law prescribes a peremptory writ of mandamus addressed to him would be as effectual to suppress public gambling as though the mayor and the executive board were also commanded to direct him to do the same thing. This result can be secured by commanding the chief of police to perform a plain duty devolving upon him, and, as a writ of mandamus will not lie to compel the execution of vain and useless things (19 Am. & Eng. Enc. Law, 2 ed. 757), no necessity existed for

joining a cause of special proceeding against the mayor
or the executive board, the discharge of whose duties, if it
be assumed they are imperative, were not an indispensa-
ble or successive step in the procedure to suppress the evil
of which the relators complain.

8. In discussing this feature of the case we have not
overlooked the legal principle that a public officer cannot
be compelled to do a particular act which his superior in
office has lawfully ordered him not to do: 19 Am. & Eng.
Enc. Law (2 ed.), 731 ; *Butterworth* v. *United States ex rel.*
112 U. S. 50 (5 Sup. Ct. 25). Assuming, as the demurrers
admit, that a conspiracy existed whereby the defendants
sought to raise a revenue by a method tantamount to
licensing public gambling, the scheme alleged to have
been adopted was unlawful, and, the agreement entered
into being void, the chief of police was not bound thereby,
nor under any obligation to obey the orders of his superi-
ors, the mayor or the executive board ; and hence man-
damus will lie to compel him diligently to prosecute any
and all persons whom he has reasonable cause to believe
guilty of a violation of the provisions of the statute pro-
hibiting gambling: B. & C. Comp. § 1950; *Goodell ex rel.* v.
*Woodbury*, 71 N. H. 378 (52 Atl. 855).

9. The relators are entitled to an effective writ, and,
having prayed for greater relief than they of right can
demand, an amendment may be desired. The statute pre-
scribes what shall constitute the pleadings in mandamus
proceedings, and provides that these formal allegations
of the parties are to have the same effect, and may be
amended in the same manner, as pleadings in an action:
B. & C. Comp. § 612. In *State ex rel.* v. *Crites*, 48 Ohio St.
142 (26 N. E. 1052), it was ruled that where, upon a peti-
tion in mandamus, an alternative writ is issued command-
ing a number of acts, either separate or connected, to be
done by the defendant, the relator is entitled to a peremp-

tory writ for such distinct acts or parts of connected acts as he may show a right to have performed, where there is no such mutual dependence between the several acts or parts of acts that they cannot be separated or divided. ·A mandatory writ, properly framed, alleging the required facts, and addressed to all the officers of the City of Portland who are indispensable in taking the necessary successive steps required successfully to ·prosecute persons for violating the law prohibiting gambling, will, in our opinion, tend to suppress the evil. If the chief of police refuses or wilfully neglects to inform against and diligently prosecute any and all persons whom he shall have reasonable cause to believe guilty of a violation of the provisions of the act prohibiting gambling, he shall be deemed guilty of a misdemeanor, and on conviction thereof in a criminal ·action instituted for that purpose will be punished and the court so trying him will declare his office vacant for the remainder of his term : B. & C. Comp. § 1951. The command of an alternative writ of mandamus is equivalent to a conclusion of law, deducible from the facts alleged, showing the particular act which the law specifically enjoins as a duty resulting from an office, trust, or station (B. & C. Comp. § 605); the failure, neglect, or refusal of the defendant to comply therewith ; and the right of the relator to insist upon its specific performance. It is the mandatory part of the writ, however, that a party defendant must look to discover the specific act which he is commanded to perform. Though it may be possible that the right to a part of the relief sought against the chief of police may be stated in the writs, the rule in this State is that, when a demurer to a complaint is sustained on the ground that several causes of action have been improperly united, the complaint is completely overthrown, and the plaintiff can only proceed by filing an amended complaint

containing the cause of action which he elects to pursue: *Cohen* v. *Ottenheimer*, 13 Or. 220 (10 Pac. 20).

As an alternative writ of mandamus stands for a complaint in an ordinary action (*McLeod* v. *Scott*, 21 Or. 94, 26 Pac. 1061, 29 Pac. 1), the judgment must be reversed, the peremptory writs set aside, and the cause remanded, with directions to sustain the demurrers in the particulars indicated herein, and for such other proceedings as may be necessary, not inconsistent with this opinion; and it is so ordered.                                                       REVERSED.